Date signed May 22, 2009



NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| COLLEEN, INC., | * | Case No. 06-13748-NVA |
| Debtor | * | (Chapter 11) |
| *   *   *   *   *   * | * | |
| GLOBAL EXPRESS MONEY ORDERS, INC., | * | |
| | * | Adversary Proc. No. 08-0700 |
| Plaintiff | | |
| v. | * | |
| FARMERS & MERCHANTS BANK, et al., | * | |
| | * | |
| Defendants. | | |
| | * | |

*   *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM OPINION IN SUPPORT OF ORDER
GRANTING MOTION [ DOC. 19] FOR ABSTENTION AND REMAND**

The Debtor in this bankruptcy case operated a now-defunct check cashing and money order

sale business.  The Debtor was engaged in the practice of check kiting and moved money among the

three banks named as the defendants in the adversary proceeding now before this Court.  The issuer

of the money orders sold by the Debtor claims that the banks improperly utilized trust funds of the

money order company to satisfy the banks' own claims against the Debtor. After the Debtor filed a chapter 11 petition in this Court, the money order company brought suit against the banks (but not the Debtor) in Maryland state court. The banks removed the action to this Court and the money order company asks this Court to abstain and remand the action back to state court.

The Court has for its consideration the Motion [doc. 19] of Global Express Money Orders, Inc. ("Global") For Abstention and Remand (the "Motion to Remand") , as well as an oppositions to the Motion to Remand filed by three banks at the following docket numbers: Baltimore County Savings Bank ("BCSB") [doc. 25], Carrollton Bank ("Carrollton") [doc. 26], and Farmers and Merchants Bank ("F&M") [doc. 27.]

On March 4 and March 24, 2009, the Court held an evidentiary hearing on the Motion to Remand and the oppositions. Based on the record in this case as well as the evidence and arguments presented at the two-day hearing on this matter, the Court has determined that it is mandatory for this Court to abstain from adjudicating this adversary proceeding, and that it is also appropriate for it to exercise its discretionary power to abstain. The Court will also remand this case to the Circuit Court for Baltimore City for the reasons set forth below.

On August 6, 2008, Global, a creditor of the instant Debtor, filed a three-count complaint against Carrollton, F&M and BCSB in the Circuit Court for Baltimore City (the "Civil Action"). Carrollton, F&M and BCSB are also creditors of the Debtor. The Civil Action alleges one-count of conversion under Maryland state law against each defendant and seeks compensatory damages against all three defendants and punitive damages against F&M and BCSB. On its face, the complaint seeks to recover damages based on actions by the banks that took place during June, 2006. Colleen, Inc., the debtor herein (the "Debtor or "Colleen") filed a voluntary petition under chapter

2

11 of the Bankruptcy Code on June 28, 2006.

After Colleen's chapter 11 case was commenced, this Court appointed Zvi Guttman as chapter 11 Trustee and he later became the Plan Agent (the "Plan Agent" or "Mr. Guttman") under Colleen's confirmed Liquidation Plan.    Because the Debtor conducted pre-petition banking operations at each of the three banks herein, Mr. Guttman looked into the conduct of the banks and the Debtor and ultimately entered into a settlement agreement with BCSB and F&M and a settlement agreement with Carrollton.  Mr. Guttman also entered into a settlement agreement with Global.

On September 17, 2008, Carrollton, F&M and BCSB (collectively, the "Banks") filed a Notice [doc. 1] of Removal of the Civil Action to this Court pursuant to 28 U.S.C. §§ 1452 and 1334. Global filed the Motion [doc. 19] to Remand and the Banks filed their respective oppositions [doc. 25, 26, 27].

Against this backdrop, Global seeks to have this Court order the remand of its Civil Action against the Banks back to the Maryland state court where it was instituted. In support of its Motion to Remand, Global acknowledges that the Civil Action relates to the Debtor in this bankruptcy case, but argues that the subject matter of the Civil Action does not relate to the bankruptcy itself.  In this regard, Global points out that the Civil Action seeks damages from non-debtor third parties and does not involve assets of the estate.  Global also argues that the Civil Action does not affect assets that will be distributed to creditors and that the Plan Agent under the Liquidation Plan has no interest in the funds that are the subject of the Civil Action or the potential proceeds of the Civil Action.  Global points out that the time period covered by the Civil Action is extremely limited - the complaint only implicates bank deposits that were made by the Debtor over a  ten-day period in June 2008.  Global argues that this Court does not have subject matter jurisdiction over the Civil Action, that the Civil

Action is not a core proceeding that it is appropriately subject to mandatory and discretionary abstention and should be remanded back to the Circuit Court for Baltimore City.  The Banks, on the other hand, argue that they are the majority of the bankruptcy estate's creditors, and, therefore that what is in their best interest is in the estate's best interest.  Further, the Banks point out that even if the Civil Action proceeds in state court, if the Banks are called to pay money to Global, they may in turn assert an indemnification claim back against the bankruptcy estate.  Accordingly, they argue, the Civil Action is sufficiently intertwined with the bankruptcy case, is a core proceeding, and this Court should not abstain from hearing it.

A.    The Civil Action is a Non-Core Proceeding

As an initial matter, this Court does not believe that the Civil Action is a core proceeding.[1] The Court derives its subject matter jurisdiction pursuant to 28 U.S.C. § 1334[2] and may hear and determine all core proceedings arising under title 11 (the Bankruptcy Code) or arising in a case under

---

[1]  A bankruptcy court has subject matter jurisdiction over both core proceedings ("arising under" and "arising in" title 11), and non core proceedings ("related to" title 11).  28 U.S.C. § 157 (b) and (c).  A bankruptcy court cannot, however, enter a final judgment in a non-core proceeding without the consent of the parties.  28 U.S.C. § 157 (c)(1).  This Court need not reach the question of subject matter jurisdiction; the question of whether this is a core proceeding is addressed as a preliminary matter because it is necessary in connection with the abstention analysis.

[2] 28 U.S.C. § 1334 (a-b) provides:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

title 11.  28 U.S.C. § 157 (b).[3]

The Civil Action does not arise under or arise in a case under the Bankruptcy Code; it is a case between non-debtor third parties and involves non-property of the estate.  *See In re Porter-Hayden Co.*, 304 B.R. 725 730 n.3 (Bankr. D. Md. 2004).  The cause of action set forth in the Civil Action was not created by the Bankruptcy Code nor will it be determined under the provisions of the Bankruptcy Code.  *See In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987) (for jurisdictional purposes, a proceeding arises under title 11 if it is created or determined by a provision of the Bankruptcy Code).  On the face of the complaint initiating the civil action, Global asserts causes of action under Maryland conversion law based on the Banks' pre-petition actions.  Nor does the Civil Action arise in a case under chapter 11.  The Civil Action exists independently of the Colleen bankruptcy case - the causes of action asserted in that case are not dependent on Colleen ever having filed for bankruptcy protection. Thus, because the claims alleged in the Civil Action have independent existence apart from the bankruptcy case, the Civil Action does not arise under or arise in this bankruptcy case.  *See Valley Historic L.P. v. Bank of New York*, 486 F.3d 831 (4th Cir. 2007).

     B.   <u>This Court Must Abstain From Hearing the Civil Action</u>

The mandatory abstention statute governing this Court is found at 28 U.S.C. § 1334 (c) (2) and provides:

> Upon timely motion of a party in a proceeding based upon a State law

---

[3] 28 U.S.C. § 157 (b) (1)  provides:

> Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title

> claim or State law cause of action, related to a case under title 11 but
> not arising under title 11 or arising in a case under title 11, with
> respect to which an action could not have been commenced in a court
> of the United States absent jurisdiction under this section, the district
> court shall abstain from hearing such proceeding if an action is
> commenced, and can be timely adjudicated, in a State forum of
> appropriate jurisdiction.

Thus, a court must abstain when: (i) the case is based on state law causes of action, (ii) the case relates to a bankruptcy case but is not a core proceeding, and (iii) the case could not have been commenced in federal court in the absence of the bankruptcy filing and the case can be timely adjudicated in state court *See In re Railworks*, 345 B.R. 529 (Bankr. D. Md. 2006).

Here, all of these factors are present. First, the Civil Action is based on state law. The complaint alleges three counts of common-law conversion, one against each of the Banks. Second, the Civil Action relates to Colleen because it appears that it was Colleen's pre-petition actions (check-kiting) that set off chain of events that resulted in various parties making claims to the same funds. Colleen made deposits in the Banks. The Banks acted against the deposits to satisfy their own claims, while Global claimed that the funds that the Banks "took" were its trust funds and therefore that the Banks engaged in common law conversion. As discussed, *supra*, however, the Civil Action is not a core proceeding. Third, the Civil Action could not have been commenced in federal court absent the bankruptcy filing and there is no allegation by the Banks that it could have been. Finally, appears the Civil Action can be timely adjudicated in state court. At the hearing on the Remand Motion, Global called as a witness Ms. Marilyn Bentley who is the scheduling coordinator for the Circuit Court for Baltimore City, the jurisdiction from which the Civil Action was removed. Ms. Bentley testified that the Civil Action would receive a trial date within one year of the time of its remand back to the Circuit Court. Considering the nature of the Civil Action, and this Court's own

docket, one year is not an unreasonably long period of time for this matter to reach trial and placement on the Circuit Court's docket in the time frame to which Ms. Bentley testified would result in a timely adjudication. Accordingly, because each element of 28 U.S.C. § 1334 (c) (2) is satisfied, this Court must abstain from hearing and determining the Civil Action.

    C.   <u>The Court Will Exercise Discretionary Abstention With Respect to the Civil Action</u>

As an equal and alternative basis for its holding, the Court exercises discretionary (permissive) abstention. The permissive abstention statute, 28 U.S.C. § 1334 (c) (1), provides:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.[4]

While the statute does not give specific direction as to the factors a court is to consider in determining whether abstention is in the interest of justice, courts have determined that an assessment of the following factors is appropriate:

(1) efficiency in the administration of the debtor's estate;

(2) the extent to which state issues predominate over bankruptcy issues;

(3) whether the issues involve difficult or unsettled questions of state law that would

be better addressed by a state court;

---

[4] 28 U.S.C. § 157 (a) provides:

 Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

In this district, bankruptcy cases are automatically referred to the bankruptcy court pursuant to District of Maryland Rule 402.

(4) the presence of a related proceeding commenced in state court;

(5) the existence of a jurisdictional basis other than [doc. Section] 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court;

(9) the burden of the federal court's docket;

(10) the likelihood that the commencement of the proceeding in federal court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial; and

(12) whether non-debtor parties are involved in the proceeding.

*In re Porter-Hayden Co.,* 304 B.R. 725, 735 (Bankr.D. Md.2004).

      1.    <u>The administration of the bankruptcy estate.</u>

The Plan Agent is operating pursuant to the Plan and the outcome of the Civil Action will have only a tangential effect, if any at all, on the administration of the estate and its assets. Accordingly, the administration of the estate can go forward unaffected by the Civil Action. This factor weighs in favor of abstention.

      2.    <u>The extent to which state law issues predominate over bankruptcy issues</u>

There are no bankruptcy issues in the Civil Action. It is based solely on state law causes of action. As explained, *infra*, although the Banks may wish to rely on federal money transmission and tracing law, the complaint, which to date is the only pleading of record in the Civil Action, the Civil

8

Action states a claim under Maryland conversion law.  No bankruptcy law is implicated.  This factor weighs in favor of abstention.

      3.    <u>Whether the issue involves difficult or unsettled questions of state law</u>

Based on the complaint initiating the Civil Action, the causes of action alleged by Global are brought under Maryland common-law conversion theories.  It may be true that these theories may evolve over time to include issues better addressed by the Maryland Money Transmission Act. Maryland common law theories of conversion and theories brought pursuant to a Maryland state statute are both well within the ken of the Maryland state court which it has particular expertise to decide.  This factor weighs in favor of abstention.

      4.    <u>The presence of a related proceeding commenced in state court</u>

There was, but is no longer, a related proceeding in state court.  This factor is neutral or inapplicable.

      5.    <u>The existence of a federal jurisdictional basis apart from the bankruptcy filing</u>

There is no federal jurisdictional basis for the Civil Action separate and apart from the bankruptcy case and the Banks do not suggest that one exists.  This factor weighs in favor of abstention.

      6.    <u>The degree of relatedness or remoteness of the proceeding to the bankruptcy case</u>

Without question, the Civil Action has some relatedness to the Debtor.  All of the parties to the Civil Action are creditors of the Debtor and Global complains of the Banks' conversion of its funds to reduce the Debtors' indebtedness to the Banks.  The relatedness of the Civil Action to the bankruptcy filing is a bit more remote.  In order to affect the bankruptcy filing (which is already in the post-confirmation stage), an allowed claim would have to result from the Civil Action.  This

cannot happen directly because the Civil Action does not seek any relief from the bankruptcy estate and the Banks and Global have entered into settlement agreements with the Trustee. It is possible that the outcome of the Civil Action could have an effect on the distributions made from the bankruptcy estate because the Banks may assert indemnification claims against the bankruptcy estate to the extent they are found liable to Global. To the extent one of these indemnification claims becomes an allowed claim against the estate, it could affect the allocation of the distributions under the Plan of Liquidation. This is a fairly tenuous connection. Moreover, it is not uncommon for claims, even claims that are eventually allowed claims against an estate, to be liquidated in another forum and then brought back to the estate for allowance and distribution. In addition, distributions from the Colleen bankruptcy estate to Global are frozen until the final disposition of the Civil Action in accordance with the a settlement between the Colleen Trustee and Global. This is being done to ensure that Global will not be paid more than 100% of its claims and this provision will not negatively affect other creditors of the Colleen bankruptcy estate; the distribution to the balance of the Colleen creditor body will go forward as set forth in Colleen's confirmed plan of liquidation. At best, this factor is neutral.

       7.     <u>The substance rather than the form of an asserted core proceeding</u>

As set forth above, the Civil Action is not a core proceeding. This factor weighs in favor of abstention.

       8.     <u>The feasibility of severing state law claims from core bankruptcy matters</u>

The Civil Action consists solely of Global's state-law conversion claims. Thus, there are no state law claims that need to be severed from bankruptcy matters. This factor weighs in favor of abstention.

9.    The burden of the Bankruptcy Court's docket

This Court believes that both the Bankruptcy Court and the Circuit Court for Baltimore City have significant case loads currently. This factor is neutral.

10.    The likelihood that the commencement of the proceeding in
federal court involves forum shopping by one of the parties

Global argues that the removal of this action constitutes forum shopping by the Banks and the Banks argue that Global's refusal to have its claims heard in federal court constitutes forum shopping by Global. As this Court understands it, they each accuse the other because federal law favors the Banks with its more stringent tracing requirements and state law favors Global with its more lenient commingling requirements. BCSB argues that Global wants the benefit of the state tracing statute which, all parties seem to agree, does not require the plaintiff to trace funds. This is in apparent contrast to the federal money transmission statute which the parties seem to agree does require tracing. The Court does not infer any negative intent by any of the parties to this action in making these arguments. This factor is neutral.

11.    The existence of a right to jury trial

Though Global did not assert its right to a jury trial, the right exists in the Civil Action. This factor favors abstention.

12.    Whether non-debtor parties are involved in the proceeding

The Civil Case involves only non-debtor third parties. This factor weighs in favor of abstention.

Having found that each of the foregoing factors weighs in favor of abstention, or is neutral or inapplicable, this Court finds that discretionary abstention is appropriate.

BCSB's Non-Specific Defense

11

BCSB took a somewhat unique approach to the defense of Motion to Remand.  Instead of arguing each factor under the above-cited test, BCSB urged the Court to look upon this case as unique and the circumstances and creditors as unique.  BCSB argues that the Banks and Global represent the overwhelming majority of the creditors of the Debtor and asserts that the Civil Action is, in reality, merely a continuation of the allocation of losses sustained by those creditors at the hands of the Debtor.  BCSB urges that these creditors should have the benefit of federal law in having their claims ultimately determined and should not be subject to the differing laws and requirements of different jurisdictions.

This is not an entirely unappealing argument to the Court.   The problem with this argument is that it hinges upon BCSB's assertion that the funds that were allegedly converted in the first instance constitute property of the estate.  This far the Court cannot go.  Mr. Guttman, the Plan Trustee, testified that he has no interest in the funds that were converted, having previously settled all claims with Global.   Accordingly, this is truly a third-party dispute between creditors of the debtor, governed by state law, in which the estate  currently has no interest.


D.    This Court Will Equitably Remand the Civil Action to the Circuit Court for Baltimore City

Virtually the same (if not the identical) factors have emerged for judging the propriety of equitably remanding an action pursuant to § 1452(b) as are utilized for determining the propriety of permissive abstention under § 1334(c)(1).  *In re Merry-Go-Round Enterprises, Inc.* 222 B.R. 254, 256 (D.Md.1998).  Notwithstanding, every remand decision does not need to be justified under abstention law because remand may be ordered on any equitable ground.  *Id.*   Here, because this Court is abstaining based on mandatory and permissive abstention, and because the Civil Action falls

12

neatly into the factors appropriate for equitable remand, the Court remands the Civil Action back to the Circuit Court for Baltimore City.

A separate order will issue.


cc:    David S. Musgrave, Esquire
       Walter R. Kirkman, Esquire
       Kelly M. Preteroti, Esquire
       Martin Ellis, Esquire
       Robert Parsons, Esquire
       Andrew Cole, Esquire
       James Heidelbach, Esquire
       Jason Hardman, Esquire
       Zvi Guttman, Esquire


**END OF OPINION**